UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:11CR 108 RWS |
| ) | |
| DENNIS RAY CAPPS, ) | |
| ) | |
| Defendant(s). ) | |

**REPORT AND RECOMMENDATION**

In Defendant's Motion to Suppress Evidence and Statements (Document #22), the defendant asks that the court suppress all physical evidence seized from him on July 28, 2011, as well as any incriminating statements he made.

The following statement of facts is taken primarily from the Government's Response to Defendant's Motion to Suppress Evidence (Document #23) with some additions made by the court.

**Factual Background**

On July 28, 2011, Sgt. Michael Carson of the Missouri Highway Patrol conducted a traffic stop of a vehicle being driven by the defendant, Dennis Ray Capps. As he was parked roadside at County Road 315 on Missouri Highway 143 in Wayne County, Missouri, Sgt. Carson saw a Ford Mustang go by. He recognized the driver as Dennis Capps and had previous knowledge that Capps's license was suspended and that there was an active felony warrant for Mr. Capps pending from Wayne County. Sgt. Carson stopped the Mustang and arrested Mr. Capps. After Capps was taken into custody, he gave consent to the troopers to search his 1997 Ford Mustang automobile. Located underneath the hood of the vehicle was a black bag containing what later tested positive as being 165

grams of material containing 138 grams of actual methamphetamine.

Capps told Sgt. Carson that the bag was his and that his wife who was also in the car did not know anything about it. Capps was then advised of his rights pursuant to Miranda and reiterated ownership of the bag containing the methamphetamine. Later on that date, Capps was again interviewed, this time by Missouri State Highway Patrol Corporal Jay Holcomb and ATF Special Agent David Diveley at the jail. After being advised of his Miranda rights again, Capps made statements to the effect that the methamphetamine was his and that he had been selling it to other people.

As grounds for his motion to suppress, the defendant states:

    1. The officers did not have probable cause to search the vehicle, nor did they have probable cause to stop the vehicle.

    2. The search was made without valid consent and without a valid search warrant.

    3. Any statements made to Sgt. Carson of the Missouri State Highway Patrol and Agent David Diveley of the Bureau of Alcohol, Tobacco, Firearms and Explosives were involuntary, were elicited by coercion and were elicited without the defendant being fully advised of and afforded his rights under the Fifth Amendment of the United States Constitution.

    4. Any statements made by the defendant were elicited as a result of an unlawful arrest and are, therefore, inadmissible.

    5. Officers searched the vehicle without a valid search warrant and without the defendant's consent.

### Probable Cause to Stop Defendant's Vehicle

As stated above, the defendant alleges that the officers did not have probable cause to stop the defendant's vehicle nor probable cause to search the vehicle.

As stated above in the Factual Background, Sgt. Michael Carson of the Missouri State Highway Patrol had knowledge that Dennis Ray Capps's driver's license was suspended and that there was an active felony arrest warrant for Mr. Capps pending from Wayne County, Missouri.

Sgt. Carson, knowing that the defendant was driving with a suspended license and that there was an active felony warrant pending for Mr. Capps, had the duty to stop Mr. Capps.

### With Respect to the Consent to Search by Dennis Capps

After Capps's vehicle was stopped, Sgt. Carson ran the license plate on the vehicle. Sgt. Carson found that the plates on the Ford Mustang the defendant was driving actually checked to a Jeep Cherokee owned by a Mark McClain of Greenville, Missouri. The sergeant determined that the plates actually were on the wrong vehicle owned by the wrong person.

Sgt. Carson thought Mr. Capps's explanation of what he and his wife were doing in the area was unusual. It was a summer day and, in the words of Sgt. Carson, "probably 100 degrees that day." Mr. Capps said he and his wife were in the park attempting to get a cabin and were going to do some hiking and wildlife viewing. Both persons were wearing blue jeans and Mrs. Capps had cowboy boots on which were "pointy-toed." (Tr. 21). Sgt. Carson thought it was somewhat unlikely that they would actually be hiking in "those types of clothes and that type of weather." (Tr. p. 7). The sergeant also knew Mr. Capps had a history of drug arrests. Id. He asked for consent to search the vehicle. The trooper testified that when he asked Mr. Capps for permission to search the car, Mr. Capps kept telling him to look in the trunk because there was a second set of license plates in the

trunk. Carson advised Capps that he wanted to search the entire vehicle, not the trunk. Sgt. Carson testified, "We discussed this for a few seconds or 15, 20 seconds, and eventually he told me to go ahead and look in the vehicle and I said you are giving me consent to search the vehicle, and he said yes, go ahead and look." (Tr. 8).

Another officer, Trooper Shane Talbert, had arrived and opened the hood and found a black bag like a small shaving kit located against the firewall on the driver's side. When the bag was opened, it contained a sock and inside the sock was a large white chunky substance, which the officers believed was methamphetamine. The substance was later field-tested and showed positive for the presence of methamphetamine.

When he started searching the vehicle, Sgt. Carson moved Mr. Capps from his patrol car to the car of a third officer, Trooper Richard Ayers. After the officers located the drugs, Carson walked back to the Ayers's vehicle and made the comment to Mr. Capps that "I thought we'd find some dope, but I didn't have any idea it would be that much." (Tr. 9). Mr. Capps stated that the drugs were his and that his wife knew nothing about it. (Tr. 10). At that point, Sgt. Carson told Trooper Ayers to give Mr. Capps the <u>Miranda</u> warnings. The sergeant testified that his comment about the amount of drugs was not in the form of a question but was "... just my comment about the situation." (Tr. 10). He testified that he was not trying to elicit some kind of incriminating response. <u>Id</u>.

In the video taken from one of the Highway Patrol vehicles of the confrontation between Sgt. Carson and Dennis Capps, they discussed the discrepancies the sergeant believed were present concerning the defendant's reason for being where he and his wife were. When Carson asked for consent to search the vehicle, Mr. Capps mentioned that he's the kind of person who never consents to the search of a vehicle. On cross-examination, Sgt. Carson was asked about that remark:

Q   Okay.  It appeared in the video that Mr. Capps said he's just the kind of person he just never consents to a search of the vehicle.  Did you get that?  Did you hear that on the video?

A   Yes, I heard that.

Q   Okay.  Did you take that as a no, that you could not search?

A   I did not, no.

Q   Okay. Was there anything that he said – what was it I guess about the things that he said that led you to believe that he had consented to the search?

A   Initially when I asked him or asked him for consent, he advised that go ahead and look in the trunk, you know, because that's where he said the other plates were.  He'd also mentioned a title – or there was supposed to be a title somewhere in the vehicle, and that's why I explained to him that I just don't want to look in the trunk, I want consent to search your vehicle.  And he said again, you know, look in the trunk, and then he went into the I never – you know me, I never give anybody consent to search my vehicle, and I'm like, you know, that's fine, if you don't want me searching it, just say no.  I said otherwise, you know, I said I want to search it.  I've dealt with Dennis before, and he's, you know, very probably blunt or if he didn't want me searching it, I thought he would have said no.

Q   Okay.

A   And then he did say it, you know, towards the end.  I said, you know, if you don't want me searching it, just say no, and I commented, you know – he's like, Look in the trunk, and I'm like I'm going to search, you know, the vehicle, the passenger

compartment, the driver area, the entire vehicle, and he's like, well, just go ahead and look, go ahead and look. I'm like, So you're giving me consent to search your vehicle. Just go ahead and look or go ahead and search. So I took that as – you know, if he didn't want me to, if he would have just said no, it would have been over with.

(Tr. 21-23).

In order for a consent to be found voluntary, it must be the product of the defendant's free and unconstrained choice, rather than the product of duress or coercion either express or implied. Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973).

To determine whether consent was voluntarily given, courts examine the totality of the circumstances. Id. at 227. Factors that weigh on the court's determination of voluntariness include: (1) the consenting individual's knowledge of the constitutional right to refuse consent, Id.; (2) the consenting individual's age, intelligence, education and language ability; Id. at 226; (3) the degree to which the consenting individual cooperates with the police; United States v. Pena-Ponce, 588 F.3d 579 (8th Cir. 2009) (consent voluntary because defendant responded "it's ok" when officers asked if they could search the car); (4) the consenting individual's attitude about the likelihood of the discovery of contraband; United States v. Hathcock, 103 F.3d 715, 720 (8th Cir. 1997) (consent to search duffel bag voluntary because suspect believed officers would inevitably detect illegal substances inside); (5) the length of detention and the nature of the questioning, Schneckloth, 412 U.S. at 226; including police threat of physical punishment, Id.; or other coercive behavior; United States v. Arciniega, 569 F.3d 394, 399. No single factor is dispositive. Schneckloth, at 226-27.

Considering Mr. Capps's consent and these factors, the following is clear:

(1) According to Carson, Capps was told more than once, "If you don't want me searching it, just say no." In <u>United States v. Mendenhall</u>, 446 U.S. 544, 559, 100 S.Ct. 1870, 1879 (1980), the Supreme Court held, "Although the Constitution does not require 'proof of knowledge of a right to refuse as the <u>sine qua non</u> of an effective consent to a search,' [<u>Schneckloth</u>, 412 U.S. at 234] such knowledge was highly relevant to the determination that there had been consent." Mr. Capps was familiar with the criminal justice system, having previously been convicted of five felonies including two separate drug offenses.

(2) Dennis Ray Capps was 37 years old when arrested. He did not interview with the Pretrial Services Officer so the amount of his education is not available; he appears intelligent enough making a practice of not consenting to a search or refusing to speak to the Pretrial Services Officer; there was no problem with his language ability.

(3) Capps agreed to the search. One important aspect touching Capps's cooperation both in consenting to the search and in giving his interview to Corporal Jay Holcomb and Special Agent Diveley was his intent to protect his wife. When methamphetamine was discovered, Capps volunteered that the bag was his and his wife did not know anything about the drug. He repeated her innocence with Sgt. Carson and later with Corporal Holcomb and Agent Diveley. Capps and his wife were both in the car and the contraband was in a location that did not point to either Capps or his wife or to both. Both were arrested and it was only after further investigation that Capps's wife was not held. (Tr. 40, 41, 44, 45).

(4) Mr. Capps would have had no doubt that the methamphetamine would be found in the search. It was located not in a hidden compartment but in a bag next to the firewall under the hood.

(5) From all indications in the testimony, the request to search came shortly after Mr. Capps

was arrested.

The court finds the consent to search his vehicle given by Dennis Ray Capps was voluntary and not the result of police threat, physical violence or other coercion.

Were a higher court to decide that Capps's consent was not voluntary, the methamphetamine would have been inevitably found in the inventory search. Colorado v. Bertine, 479 U.S. 367, 372 (1987). The vehicle was properly impounded as containing contraband and since both occupants were arrested. (Tr. 45). Sgt. Carson testified that the Missouri State Highway Patrol has a written policy concerning inventory searches. The policy provides, "That there is an entire inventory of the vehicle." (Tr. 13). Sgt. Carson stated further that he had no reason to believe that the drugs would not have been discovered in the inventory search. Id.

### **Defendant's Statements**

Immediately after the drugs were found at the scene of the vehicle stop and Mr. Capps volunteered that the drugs were his and not his wife's, Capps was given the Miranda warnings by Trooper Richard Ayers. (Tr. 9). Ayers read the rights from a card kept on the trooper's visor. After he was read the rights, Mr. Capps again stated that the drugs were his, "it was not his wife's, she wasn't involved. They had just got back together." (Tr. 31). Trooper Ayers testified that Mr. Capps understood the rights. Id. "I asked if he understood, and he advised yes." (Tr. 35)

Corporal Jay Holcomb of the Missouri State Highway Patrol testified about the interview he and Special Agent David Diveley had with Mr. Capps the same evening after Capps was arrested. It took place at the Highway Patrol zone office inside the Wayne County Sheriff's Department in Greenville, Missouri.

Corporal Holcomb testified that Mr. Capps appeared to be oriented as to time and space,

where he was. (Tr. 37). He did not appear to be emotionally distraught or hysterical. He did not appear to be ill or intoxicated or under the influence of any drug or other substance. He did not appear to have any difficulty in understanding what he was being told by Corporal Holcomb or by other people. Id.

The corporal did not have any difficulty in understanding Mr. Capps. He testified about his providing Miranda rights to Capps:

Q        Now when you interviewed Mr. Capps on July 28th, was he advised of his rights per Miranda?

A        Yes, sir, he was.

Q        And who did that?

A        Myself.

Q        Okay. And how did you do that?

A        The Missouri State Highway Patrol has a Notification of Rights form, which I read from, and Mr. Capps signed it.

Q        Okay. And did he indicate if he understood those rights?

A        Yes, sir.

Q        Okay. Did he agree to speak with you?

A        Yes, sir.

Q        Now he was presented as you indicated with a Notification of Rights form. Did you discuss that form with Mr. Capps?

A        Yes, sir, I did.

Q        And you indicated that he signed that?

A   Yes, sir.

Q   Did he do that in your presence?

A   Yes, sir.

> MR. WILLIS: Your Honor, may I approach the witness?
>
> THE COURT: Yes.

Q   (By Mr. Willis) I'm going to show you what's marked for identification purposes Government Exhibit 3 and ask if you recognize what this document is.

A   Yes, sir. This is the Notification of Rights form that was given to Mr. Capps that day.

Q   And is this the one he signed?

A   Yes, sir, it is.

Q   And you observed him do that?

A   Yes.

Q   Is that his signature on the form?

A   Yes, sir.

Q   Okay. Now was he also provided with a separate form, a written Waiver of Rights form/

A   Yes, sir, he was.

Q   Okay. And did you discuss that form with Mr. Capps?

A   Yes, sir.

Q   Did he sign that form also?

> A   Yes, sir, he did.
>
> Q   And did he do that in your presence?
>
> A   Yes, sir.
>
> Q   Okay. I'm going to hand you what's marked for identification purposes Government Exhibit No. 4 and ask if you know what that is?
>
> A   This is the Waiver of Rights form that's provided by the Missouri State Highway Patrol which I advised Mr. Capps of, and it has his signature on it.

The Notification of Rights was marked and identified as Government's Exhibit 3. A Waiver of Rights form was also marked and identified as Government's Exhibit 4. Corporal Holcomb presented the form to Mr. Capps, discussed the form with Capps and Mr. Capps signed it in the Corporal's presence. Holcomb testified that he did not apply any force of threat or coercion to Mr. Capps to get him to waive his rights and talk to him. He did not see anyone else do so. Neither Corporal Holcomb or anyone else made any promises to Mr. Capps.

The court finds Sgt. Michael Carson of the Missouri State Highway Patrol had probable cause to stop the defendant's vehicle. The defendant was arrested for traffic violations and pursuant to a pending arrest warrant issued from Wayne County, Missouri. The defendant consented to the search of his vehicle. In addition, the contraband would have been inevitably found pursuant to a proper inventory search. Statements made to law enforcement by the defendant were either volunteered or followed the administration of the <u>Miranda</u> warnings. The defendant's statements were voluntary, not the product of coercion, and are admissible in evidence at trial.

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements (Document #22) be denied.

The parties are advised that they have fourteen (14) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990).

*/s/ Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of February, 2012.