UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | Case No. 1:11-cr-00108-AGF |
| ) | |
| DENNIS RAY CAPPS,  ) | |
| ) | |
| Defendant.  ) | |

# MEMORANDUM AND ORDER

Defendant Dennis Ray Capps filed a pro se motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Capps's motion has since been supplemented by counsel, including the most recent supplement filed in response to the Court's October 30, 2023 Order (ECF No. 159) requesting supplemental briefing to address the 2023 amendments to the Sentencing Guidelines. *See* U.S.S.G. §1B1.13 (effective Nov. 1, 2023); *see also* U.S. Sent'g Commission, "Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index" (Effective Nov. 1, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (hereinafter, "Official Commentary").

The motion and supplements contend that Capps is currently serving an unusually long sentence, namely, a mandatory life sentence for a non-violent drug offense, and that

had Capps been sentenced today, he would have been sentenced to a vastly shorter term of imprisonment, resulting in a gross disparity.  Capps argues that a sentence reduction is warranted because, in addition to having already served more than 12 years of his unusually long sentence, he has made remarkable progress toward rehabilitation, including a continued dedication to sobriety that began before his sentencing and certification as an HVAC technician; he has strong family support, including a stable place to live and immediate employment; and he poses no danger to any person or to the community.[1]

The Government opposes Capps's motion, primarily arguing that Eighth Circuit precedent forecloses this Court from granting a sentence reduction based on a nonretroactive change in the law, and alternatively, that a 2023 amendment to the Sentencing Guidelines permitting consideration of such nonretroactive changes in the law is invalid.

The Court concludes that Capps has shown extraordinary and compelling reasons warranting a sentence reduction.  Considering the sentencing factors under 18 U.S.C. § 3553(a) and whether Capps is a danger to the community, the Court concludes that it is appropriate to grant Capps's motion for a sentence reduction.  The Court will order that Capps's sentence be reduced to 180 months' imprisonment, plus a term of 10 years of supervised release.  Further, the Court will add an additional condition of supervision up to

---

[1]     Although in Capps's original motion, he also argued that compassionate release was warranted to care for his seriously ill mother and fiancée, Capps has now withdrawn that ground as both his mother and fiancée have passed away.  *See* ECF No. 160 at 5-6.

six months at a residential reentry center, as deemed appropriate by the probation office, and will also amend the terms of supervised release to remove those conditions no longer applicable and to include mental health treatment and other pertinent changes.

## BACKGROUND

In October 2011, Capps was charged with one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(l)(A).  ECF No. 2.  At the time, § 841(b)(1)(A)(viii) provided that an individual who was convicted of possessing with intent to distribute "50 grams or more of methamphetamine . . . shall be sentenced to a mandatory term of life imprisonment without release" if such individual had "two or more prior convictions for a felony drug offense."

Capps had two prior drug convictions in state court, one for manufacturing a controlled substance and another for possession of a controlled substance, both committed in 2001.[2]  The Government filed a prior felony information that, under the then-applicable statute, raised the sentencing range for Capps's offense to a mandatory life sentence.  ECF No. 47.

Capps was convicted on the single-count indictment on May 30, 2012, and this Court sentenced him on January 22, 2013, to life in prison plus 10 years of supervised release, as required under the then-applicable statute.  As the Court recognized at the time

---

[2]   Capps was sentenced for these two prior convictions on the same day, November 11, 2002, was paroled in December of 2004, and was discharged in January of 2008.  *See* ECF No. 92.

5

of sentencing, if the Court were not bound by statute's mandatory minimum, the applicable advisory range under the Sentencing Guidelines at that time based on Capps's offense level and criminal history would have been 235 to 293 months' imprisonment. ECF No. 105, Sent'g Tr. at 14. The Court also expressed its belief at the time of sentencing that the mandatory life sentence it was required to impose was unduly harsh given Capps's individual circumstances. Specifically, the Court stated:

> I have troubled over this case for quite some time. It is a difficult matter. It is difficult to impose a sentence of life with respect to an individual as young as you. It is difficult to impose a sentence of life with respect to somebody who is impacted by substance abuse, somebody who has developed an addiction. It is difficult to impose a sentence of life with respect to an individual who was a model prisoner on probation and showed the ability to conquer his substance abuse for a lengthy period -- for a number of years. It is very difficult. . . . I don't think that a mandatory minimum sentence of life here makes a whole lot of sense.

*Id.* at 54-55.

Capps's conviction and sentence was affirmed on appeal. He is currently incarcerated at Atwater USP in California serving a life sentence. He is 50 years old.

In 2018, several years after Capps's conviction and sentence became final, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018), which eliminated mandatory life sentences for non-violent drug offenders like Capps and which expanded the ability of certain individual defendants to seek a reduction in sentence. But Congress did not make the life sentence reduction retroactive.

6

## **DISCUSSION**

A court can reduce a final sentence only under the very limited circumstances listed in 18 U.S.C. § 3582(c). Before the passage of the First Step Act, a defendant could not file a motion for compassionate release directly with the court. Instead, only the Bureau of Prisons (BOP) could request compassionate release. *See, e.g., United States v. Mills,* No. 1:10-CR-117 CAS, 2014 WL 3845441 (E.D. Mo. Aug. 5, 2014). The First Step Act changed that so that a defendant may now file a direct motion with the court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." § 3582(c)(1)(A). The Government does not dispute that Capps has exhausted his administrative remedies.

Section 3582(c)(1)(A) "permits a district court to reduce a prisoner's sentence if, after considering the factors in 18 U.S.C. § 3553(a), 'it finds that extraordinary and compelling reasons warrant such a reduction' and 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 28 F.4th 929, 930 (8th Cir. 2022) (quoting 18 U.S.C. § 3582(c)(1)(A)). "In 28 U.S.C. § 994(t), Congress directed the Commission to define 'what should be considered extraordinary and compelling reasons for [a] sentence reduction.' [Prior to the First Step Act], the Commission published its substantive definition in USSG § 1B1.13." *United*

7

*States v. Rodriguez-Mendez*, 65 F.4th 1000, 1002 (8th Cir. 2023).

Specifically, in Application Note 1 to § 1B1.13, the Commission defined certain categories of circumstances qualifying as "extraordinary and compelling reasons" under § 3582(c)(1)(A), such as a defendant's medical condition, age, and family circumstances. Prior to November of 2023, Application Note 1 also included a catch-all category of "other reasons" determined by the Director of the BOP. *See* U.S.S.G. § 1B1.13. This catch-all provision was drafted before the First Step Act was enacted, and thus at a time when only the BOP could file compassionate release motions. The Commission had not previously amended § 1B1.13 to address the First Step Act because it lacked a quorum to do so.[3]

In light of that fact, the circuit courts of appeal were split prior to November of 2023, as to whether § 1B1.13 was still an "applicable policy statement" binding district courts' discretion to evaluate defendant-filed compassionate release motions. *Rodriguez-Mendez*, 65 F.4th at 1002. Although the Eighth Circuit declined to take a position on the issue, it indicated in *Rodriguez-Mendez* that § 3582(c)(1)(A) "makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence," and it noted that a 2023 amendment to § 1B1.13 (proposed at that time, though now effective and discussed below) "should resolve any doubt it continues to be an applicable policy statement." *Id.* (citation omitted) (emphasis in original).

---

[3] From 2019 until August of 2022, the Commission did not have a quorum and was therefore unable to adopt policies or amendments.

As noted above, effective November 1, 2023, the Sentencing Commission amended § 1B1.13 to implement the First Step Act and to explicitly address defendant-initiated motions for compassionate release.  See U.S.S.G. § 1B1.13 (effective Nov. 1, 2023).  This amendment identifies several circumstances that, alone or in combination, may qualify as extraordinary and compelling reasons warranting a sentence reduction.  See U.S.S.G. § 1B1.13.

> As relevant here, § 1B1.13, as amended, provides:
>
> (a) In General.—Upon motion of the . . . defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
>> (1) (A) extraordinary and compelling reasons warrant the reduction;
>>
>> . . .
>>
>> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>>
>> (3) the reduction is consistent with this policy statement.
>
> (b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
>> . . .
>>
>> (6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being

9

>served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.*

The amendment further provides:

>(c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.
>
>(d) Rehabilitation of the Defendant.—Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

*Id.*

Thus, pursuant to this amendment, subsection (b)(6) specifically authorizes district courts to consider nonretroactive changes in the law (other than nonretroactive changes to the Guidelines Manual) as extraordinary and compelling circumstances warranting a sentence reduction, but only under a narrow set of circumstances. Specifically, (a) the defendant must be serving an unusually long sentence; (b) the defendant must have served at least 10 years of that sentence; (c) the change in the law must have produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed; and (d) the court must have fully considered the defendant's

individual circumstances.

**Capps's Eligibility Under Subsection (b)(6)**

Undoubtedly, Capps's sentence of life imprisonment is unusually long. According to statistics published by the Commission, only 709 federal offenders—0.2% of the total federal offender population—received a life sentence during fiscal years 2016 through 2021. *See* U.S. Sent'g Commission, "Life Sentences in the Federal System," at pp. 2, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf; *see also* Official Commentary, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf, at p. 6 ("[B]etween fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all offenders were sentenced to a term of imprisonment of ten years or longer."). There is also no dispute that he has served more than 10 years.[4]

Further, a change in the applicable statute produced a gross disparity between the life sentence that Capps is serving and the sentence likely to be imposed at the time his motion was filed. The Court finds that the change in law that eliminated the life sentence, alone, creates a gross disparity between Capps's sentence and the otherwise applicable Guideline range of 235 to 293 months that would have applied at the time of sentencing in 2013. Indeed, this Court expressly noted at the time of sentencing that the mandatory life

---

[4]   Capps was taken into federal custody on November 3, 2011.

sentence was troubling and did not make sense for an individual as young as Capps, with Capps's history of substance abuse disorder, and with Capps's significant rehabilitation and sobriety since the time of his offenses.

Moreover, retroactive amendments to the Sentencing Guidelines made effective after the time of sentencing, such as the Drug Minus Two Amendment, U.S.S.G. App. C, amend. 782 and amend. 788 (effective Nov. 1, 2014), would further reduce the Guidelines range to which Capps would be subject if the mandatory minimum life sentence did not apply. *See* U.S.S.G. § 1B1.13(b)(6) (directing the Court to consider "the sentence likely to be imposed at the time the motion is filed" in determining whether a gross disparity exists).[5] The Government also concedes that under the relevant statute in effect at the time Capps's motion was filed, only one of Capps's prior convictions would qualify as a serious drug felony, and would result in a mandatory minimum sentence of 180 months incarceration, rather than life. *See* ECF No. 150, Gov't brief at 5 (citing 21 U.S.C. § 841(b)(1)(A)(viii)).[6]

---

[5]  Since Capps filed his motion, the Commission has also adopted a retroactive amendment with respect to status points, which would further reduce the Guideline range today, absent a mandatory minimum sentence. *See* U.S.S.G. App. C, amend. 821 (effective Nov. 1, 2023).

[6]  Additionally, although the BOP does not calculate good time credit for persons serving life sentences, if Capps had been sentenced to a term of months, he would likely be eligible for up to 54 days good time credit for each of the 12 years he served (totaling approximately 648 days or more than 21 months). *See* 18 U.S.C. § 3624; 28 C.F.R. § 523.20.  The calculation of credit for good time and program participation is a matter for BOP to determine; however, the Court believes that with this Court's Order, Capps will now be entitled to such credits and will be eligible for release in the very near future.

The difference between these reduced ranges and a lifetime sentence, particularly given Capps's young age at the time of sentencing (38 years old), constitutes a gross disparity.[7]

Finally, the Court must consider Capps's individualized circumstances.  Neither the amendment nor the statute expressly limits the Court's discretion as to what such circumstances may be considered.  However, the Court concludes that Capps's young age at the time of his offenses, his tremendous commitment to sobriety and rehabilitation, and his strong family support—when considered in light of the more than 10 years he has already served and his unusually long sentence that so drastically exceeds what Congress now deems appropriate for the crime charge—place him squarely within the narrow subset of sentences presenting "extraordinary and compelling reasons" for a sentence reduction.

After 12 years in prison, Capps has demonstrated that he is truly a changed person.  An examination of the numerous letters of support in the record "provides the most up-to-date picture of [Capps's] 'history and characteristics.'"  *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  These letters from his family describe Capps's deep connection with his son and grandchildren, and his home plan and job offer already in place should he be granted a sentence reduction.

Since his incarceration, Capps has completed intensive drug treatment as part of the Challenge Program, a 500-hour community living program that "helped him explore the

---

[7]  Even the Government recognizes that the sentencing disparity in Capps's case is significant and, for that reason, has supported a commutation of Capps's sentence by the President.  *See* ECF No. 150 at 4 n.2.

things in life that caused him to relapse." ECF No. 149 at 17. This program required Capps to "attend and actively participate in program activities, complete all assignments and demonstrate treatment progress in order to advance to the next phase." *Id.* at Ex. 5. Capps's treatment specialist remarked that he excelled in the program and has consistently been regarded as a positive role model in the community, including by serving as a mentor for others struggling with addiction and volunteering to teach a crochet class to Challenge community members and donating the projects to charity. *Id.*

Capps has also completed extensive educational and vocational training in prison and has succeeded in becoming a certified HVAC technician. He is described by his vocational training instructor as demonstrating a "work ethic that is second to none," consistent professionalism, exceptional interpersonal and leadership skills, and a thorough knowledge of his trade. *Id.* at Ex. 6.

The Government correctly notes that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." *United States v. Fine*, 982 F.3d 1117, 1118 (8th Cir. 2020) (citing 28 U.S.C. § 994(t)) (emphasis added). However, neither the statute nor policy statement prohibit successful rehabilitation efforts from being considered among the individual circumstances that the Court is required to evaluate under subsection (b)(6). *See* Official Commentary at p.7 (describing "commendable rehabilitation while incarcerated" and that the "offense conduct occurred when the defendant was in his late teens or early twenties" among examples of a combination of

14

circumstances that a court may consider in evaluating a motion filed under § 3582(c)(1)(A)); *see also Concepcion v. United States*, 597 U.S. 481, 491 (2022) (holding that district courts have broad discretion, at both initial sentencing and in later proceedings to modify a sentence, "to consider all relevant information . . . consistent with their responsibility to sentence the whole person before them," and that "[s]uch discretion is bounded only *when Congress or the Constitution expressly limits the type of information a district court may consider* in modifying a sentence") (emphasis added). For all of these reasons, the Court concludes that Capps has demonstrated extraordinary and compelling reasons warranting a sentence reduction under subsection (b)(6).

**Applicability of *Crandall* and *Rodriguez-Mendez***

The Government argues that Eighth Circuit precedent—specifically, the Eighth Circuit's decisions in *United States v. Crandall*, 25 F. 4th 582 (8th Cir. 2022) and in *Rodriguez-Mendez*, *supra*—forecloses Capps's reliance on a nonretroactive change in the law as a ground for a sentence reduction. However, both of these cases were decided before the 2023 amendment to § 1B1.13 took effect. And while the Government correctly notes that *Rodriguez-Mendez* briefly discussed the amendment (which had only been proposed at that time and had not yet taken effect), 65 F.4th at 1004, any such discussion was dicta. *See Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) (dicta is not binding).

The only issue presented and decided in *Rodriguez-Mendez* was whether *Crandall*

15

remained binding as of April 25, 2023 (the date of the panel's decision in *Rodriguez-Mendez*), or whether *Crandall* had been implicitly overruled by the Supreme Court's intervening decision in *Concepcion*, 597 U.S. 481. *See* 65 F.4th at 1001. The appellate court's commentary regarding the proposed subsections (b)(6) and (c), and the potential meaning of these subsections, was unnecessary to the court's ruling.

Further, the dicta in *Rodriguez-Mendez* on which the Government relies, while unclear, appears to contradict the plain reading of subsection (b)(6). *See Rodriguez-Mendez*, 65 F.4th at 1004 (partially quoting subsections (b)(6) and (c), and then commenting that "[i]t thus appears that the Commission proposes to adopt (or to express more clearly) that nonretroactive changes in sentencing law may *not* establish eligibility for a § 3582(c)(1)(A) sentence reduction") (emphasis in original). As discussed above, subsection (b)(6), when read together with subsection (c), which expressly exempts (b)(6), plainly establishes eligibility for a § 3582(c)(1)(A) reduction based on nonretroactive changes in sentencing law (other than nonretroactive amendments to the Guidelines Manual) in certain narrowed circumstances. The Court is bound by this applicable policy statement. *See Crandall,* 25 F. 4th at 584 ("Although a policy statement standing alone may be merely 'advisory,' . . . the statute in this case makes consistency with an applicable policy statement a *mandatory* condition for a reduction in sentence.") (citations omitted).

The language of subsection (b)(6) is unambiguous. But if there were any doubt, the official commentary to the amendment makes the Commission's intent explicit: "The

16

amendment agrees with the circuits that authorize a district court to consider nonretroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction but adopts a tailored approach that narrowly limits that principle" in the ways discussed above (requiring an unusually long sentence, at least 10 years served, gross disparity, and consideration of individual circumstances). Official Commentary, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf, at p. 12; *see also Stinson v. United States*, 508 U.S. 36, 44–45, (1993) (holding that the commentary to the Guidelines is to "be treated as an agency's interpretation of its own legislative rule" and given "controlling weight unless it is plainly erroneous or inconsistent with" the guideline it interprets).[8]

**Validity of Subsection (b)(6)**

Alternatively, the Government argues that subsection (b)(6) is an invalid exercise of the Commission's authority. Specifically, the Government contends that subsection (b)(6) conflicts with § 3582(c)(1)(A) because nonretroactive changes to sentencing law are neither extraordinary nor compelling. The Government further argues that the subsection raises separation-of-powers concerns because it contradicts Congress's deliberate choice not to

---

[8] Although, "there is circuit disagreement on the deference to be afforded the Guidelines' commentary," neither the Eighth Circuit sitting en banc nor the Supreme Court has overruled Eighth Circuit precedent adhering to *Stinson*. *United States v. Rivera*, 76 F.4th 1085, 1091 (8th Cir. 2023); *see also Ratzloff v. United States*, No. 23-310, 2024 WL 71948, (U.S. Jan. 8, 2024) (declining to hear appeal seeking to resolve the circuit split).

make the change in sentencing law here retroactive.

The Court disagrees. "Congress is not shy about placing [sentencing modification] limits where it deems them appropriate." *Concepcion*, 597 U.S. at 494. In this case, Congress broadly empowered and directed the Commission to issue binding guidance as to what circumstances qualify for potential reduction. *See* § 3582(c)(1)(A). Nothing in the statute's text prohibits the Commission from considering nonretroactive changes in the law as extraordinary and compelling reasons for a sentence reduction.

The absence of any such limitation is telling. Congress could have drafted such a blanket prohibition into § 3582(c)(1)(A), as it did in 28 US.C. § 994(t) by specifying that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *See also Concepcion*, 597 U.S. at 483 ("Congress has shown that it knows how to direct sentencing practices in express terms."). Congress chose not to impose a similar prohibition with respect to nonretroactive changes in the law.

The Government also echoes the Eighth Circuit's concern expressed in *Crandall* that considering nonretroactive change in the law as a ground for a sentence reduction would result in a "freewheeling opportunity for resentencing" with no "sound limiting principle." *Crandall*, 25 F.4th at 586. However, the Commission squarely addressed that concern when drafting subsection (b)(6), by narrowly limiting the circumstances in which a defendant may be resentenced. Rather than categorically permitting relief based on nonretroactive changes in the law, subsection (b)(6) requires a case-specific, context-based

determination and allows for relief only in those cases where a defendant has served (i) at least 10 years (ii) of an unusually long sentence, and (iii) a change in law has produced a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

As with legislative rules adopted by federal agencies, guidelines and policy statements such as the amended § 1B1.13 are a matter of the Commission's "particular area of concern and expertise," and as a result of an express congressional delegation of authority, the "Commission itself has the first responsibility to formulate and announce" such policy statements. *Stinson*, 508 U.S. at 45. When "Congress entrusts to the [Commission], rather than to the courts, the primary responsibility for interpreting the statutory term[,] . . . [a] reviewing court is not free to set aside [that interpretation] simply because it would have interpreted the statute in a different manner." *Batterton v. Francis*, 432 U.S. 416, 425 (1977). Indeed, as the Commission notes in its commentary, the Government itself has on several occasions successfully blocked Supreme Court review of the issue of whether nonretroactive changes in the law may be considered under § 3582(c)(1)(A) as extraordinary and compelling reasons on the ground that the issue "should be addressed first by the Commission." *See* Official Commentary, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf, at p. 6 (citing the Department of Justice's opposition to grant of certiorari in various cases).

19

The Commission has now addressed the issue and has adopted an applicable policy statement that establishes Capps's eligibility for a sentence reduction in this case. Considering the record as a whole, the Court concludes that Capps has demonstrated extraordinary and compelling reasons warranting a sentence reduction.

**Dangerousness and Section § 3553(a) Factors**

Capps has also made a strong showing that he would not pose any danger to the community if released early. Capps's prior convictions occurred more than 20 years ago and were both non-violent drug offenses. Capps has had no history of violence during his incarceration and only one minor disciplinary infraction—relating to being in an unauthorized area—during his more than a decade in prison. His record in prison is otherwise perfect. There is no indication that Capps poses any danger to the community.

In short, Capps's history and characteristics, both before his conviction and in the more than 10 years since weigh strongly in favor of granting his motion. The seriousness of Capps's offense and any prior offenses is reflected in the 12 years he has already served. Capps has worked through the past decade in prison to better himself, notwithstanding his life sentence, and that work has prepared him for a productive life after release. He has undergone extensive drug treatment and vocational training to assist him in seeking sustainable employment. He has a virtually spotless disciplinary record, a supportive family, and a solid home plan.

Further, the Court is not ordering immediate release but only a sentence reduction

20

consistent with the goals of § 3553(a).  Capps will also still be subject to a 10-year term of supervised release upon his release from prison, the terms of which additionally promote respect for the law, protect the public, and afford adequate deterrence of future criminal conduct.  Finally, to assure that Capps has a proper transition and a proper home plan, the Court will add a special condition of up to six months at a residential reentry center, as deemed appropriate by the probation office.

## **CONCLUSION**

After considering all the sentencing factors set out in 18 U.S.C. § 3553(a), the Court concludes that a sentence of 180 months' imprisonment is sufficient but not more than necessary to meet the sentencing objectives of the statute, and that he should be granted this sentence reduction.  The Court will thus reduce Capps's sentence to 180 months' imprisonment, plus a term of 10 years of supervised release.  As previously indicated, the Court will also add an additional condition of supervision up to six months at a residential reentry center, as deemed appropriate by the probation office, and will amend the terms of supervised release to remove those conditions no longer applicable and to include mental health treatment and other pertinent changes.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dennis Ray Capps's pro se and amended motions for compassionate release are **GRANTED as follows**.  ECF Nos. 126, 149 & 160.  Defendant's sentence of imprisonment in this case is reduced to 180 months' imprisonment, plus a term of 10 years of supervised release.  An additional period of up to

21

six months at a residential reentry center, as deemed appropriate by the probation office, will be added to his conditions of supervision.  The terms of supervised release will be further amended to remove those conditions no longer applicable and to include mental health treatment and other pertinent changes.

     An Amended Judgment complying with this Order and Memorandum is entered separately today.

                                            AUDREY G. FLEISSIG
                                            UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2024.

22